FILED

October 12, 2016

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 2:12 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Mae Crumble ) | Docket No. 2016-07-0351 |
| ) | |
| v. ) | State File No. 99792-2015 |
| ) | |
| Express Employment Services, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Allen Phillips, Judge ) | |

---

### Vacated and Remanded - Filed October 12, 2016

---

In this interlocutory appeal, the employer seeks a reversal of the trial court's determination that the employee is entitled to a panel of orthopedic specialists. The employer provided a panel that included two walk-in medical facilities and an occupational medicine practitioner. After receipt of a medical opinion suggesting the employee's complaints did not arise primarily out of the employment, the employer denied the claim. Following an expedited hearing, the trial court found the employee had presented sufficient proof to entitle her to a panel of orthopedic physicians and awarded medical benefits, but denied the employee's request for temporary disability benefits. The employer has appealed. Because this appeal hinges upon issues not resolved by the trial court, we vacate the trial court's decision and remand the case so that those issues can be resolved.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Gregory H. Fuller, Brentwood, Tennessee, for the employer-appellant, Express Employment Services

Edward L. Martindale, Jr., Jackson, Tennessee, for the employee-appellee, Mae Crumble

1

## Factual and Procedural Background

Mae Crumble ("Employee") was employed by Express Employment Services ("Employer") on November 14, 2015, the date on which she alleges she suffered an injury arising primarily out of and occurring in the course and scope of her employment. Employer is a staffing agency and had placed Employee at ARJ Manufacturing ("ARJ") in the welding department where she worked as a "checker." The job required her to move a heavy bar, which she testified weighed at least fifty pounds, over her head in various directions. She testified that on November 14, 2015, she felt a "pop" and pain in her right shoulder while performing her work duties. She asserted that she informed her supervisor at ARJ immediately, but did not seek medical care. She requested she be assigned to a less strenuous position, and her supervisor complied with the request. Her assignment at ARJ was terminated on December 11, 2015, as ARJ did not have a permanent position to offer her.

In an expedited hearing, Employee testified she called Employer "maybe two weeks after" the November 14, 2015 incident to report she had injured her shoulder, but Employer denied having received this notice. Rather, Jamie Johnson, Employer's representative responsible for hiring and placing Employee, testified Employee had called and requested a less strenuous assignment, but never reported that she was making the request due to a workplace injury. Ms. Johnson also testified that, had Employee reported a workplace injury to her supervisor at ARJ, the protocol was for the supervisor to contact Employer to inform it of Employee's injury. Employer's representatives testified that the first notice of Employee's alleged injury occurred on December 16, 2015, after Employee had presented to an emergency room for treatment.

Employee first sought treatment for her injuries at Jackson-Madison County General Hospital emergency department on December 16, 2015, complaining of right shoulder and neck pain. On a computer-generated intake form, unidentified hospital personnel handwrote "ARJ in Jackson says don't [sic] know if [workers'] comp because they told her not to come to [the doctor]." The emergency room records reflect varying reports of when the alleged injury occurred, in some places indicating Employee's complaints began at work approximately two weeks prior to her visit and in others indicating the complaints began approximately six weeks prior to the visit. The mechanism of injury was described in the records as repetitive stress at work, and the records stated Employee denied having suffered right shoulder pain prior to beginning her assignment at ARJ. X-rays were normal, and Employee was diagnosed with right shoulder pain and possible rotator cuff injury. Upon discharge, she was given prescriptions, which she testified she did not fill because she could not afford to do so. The records indicate Employee was also told to follow up with her primary care physician and/or an orthopedic doctor.

After leaving the emergency room, Employee went to Employer's office where she met with three individuals, one of whom was Employer's risk manager. They discussed Employee's alleged injury, her emergency room visit, and her request that Employer pay the medical bills associated with her evaluation and pay to fill the prescriptions she was given. Because the treatment was unauthorized, Employer declined to pay for the evaluation or the prescriptions. Employee completed an injury report during the meeting, and she was provided a panel of medical providers that included two walk-in medical facilities and an occupational medicine physician. Employee testified she selected WorkCare Resources, Inc. ("WorkCare"), one of the walk-in clinics, because Employer's representatives with whom she met told her the other two providers on the panel would not be able to see her that day, but she could be seen at WorkCare immediately. At the expedited hearing, Employer's staffing consultant, Ms. Johnson, did not recall telling Employee she could be seen at WorkCare immediately, although she acknowledged Employer's risk manager or someone else in the meeting may have told Employee she would be seen more quickly at WorkCare. Employer's risk manager denied attempting to influence Employee's selection.

Employee was seen the same day at WorkCare. She was initially evaluated by a nurse practitioner, Amy Naylor. After Employee was given a drug screen, Ms. Naylor transported her to see Dr. Conrado Sioson, who maintained an office at a separate facility about two miles away from WorkCare. At the expedited hearing, Ms. Naylor testified that, while Dr. Sioson does not maintain an office at WorkCare, he is the physician retained by WorkCare to evaluate its workers' compensation patients and is her "precepting physician."[1] Dr. Sioson was not named on the panel of physicians provided to Employee, and it does not appear that Employee was aware when she selected WorkCare that she would be transported from WorkCare's facility to see a physician at another location.

Dr. Sioson's physical examination of Employee was cut short when Employee complained that Dr. Sioson's manipulation of her arm was causing her pain and asked him to stop. Employee testified she was willing to be examined, but felt that because Dr. Sioson had indicated he had nothing to offer her, she did not want to endure additional painful physical testing. Dr. Sioson's record noted that Employee did not report a specific date of injury or a specific event causing her injury, but complained that her shoulder began hurting when she began working. His report further stated:

> Due to no one specific injury or date of injury and the timing of which this injury was reported (one week after termination of her work assignment) it is not possible for me to classify this as a work related injury. It was

---

[1] The medical definition of "preceptor" in this context is "a practicing physician who gives personal instruction, training, and supervision to a medical student or young physician." http://www.merriam-webster.com/dictionary/preceptor (last visited Oct.12, 2016).

recommended to [Employee] to follow the instruction given to her by the [emergency room] provider or to see her [primary care physician].

Thereafter, Employer denied the claim on the bases that the authorized physician had opined the injury was not work-related, that Employee had failed to provide proper notice of a work-related injury, and that Employee had refused to submit to a reasonable examination, which operated to suspend her benefits. Following the expedited hearing, the trial court found Employee was a credible witness and had provided proper notice of her injury. The court noted inconsistencies in the records of Dr. Sioson and his responses to questions posed by Employer on a "Medical Questionnaire." Noting that the medical proof was "not entirely clear," the trial court found the proof "sufficient to entitle [Employee] to a panel of orthopedic specialists as recommended by the provider at Jackson General [emergency department]." Although not expressly stated, the trial court implicitly determined that Employee would likely prevail at a hearing on the merits. However, the trial court did state that Employee "is entitled to receive a complete evaluation based on the applicable standard of proof." The trial court denied Employee's request for temporary disability benefits. Employer has appealed, and both parties have presented issues for consideration.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

## Analysis

Employer asserts two issues on appeal. First, Employer contends the trial court erred by applying an incorrect legal standard in addressing medical causation. More specifically, Employer contends the trial court erred in failing to apply a presumption of

4

correctness to Dr. Sioson's causation opinion and in failing to address whether Employee offered sufficient proof to rebut Dr. Sioson's causation opinion. Second, Employer contends the trial court erred in ordering it to provide a panel of orthopedic specialists, asserting it provided a valid panel from which Employee selected a provider who has not made a referral to an orthopedic specialist.

In response to Employer's assertion that the trial court analyzed the issue of medical causation under an incorrect standard, Employee questions whether Dr. Sioson was "a properly paneled doctor." She asserts that Dr. Sioson was not a properly paneled doctor and that, even if he was, the medical records and information in Dr. Sioson's responses to the Medical Questionnaire justify the trial court's order that a panel of orthopedic specialists be provided. For the reasons that follow, we vacate the trial court's order and remand the matter to the trial court for determination of issues that the trial court has not resolved.

In *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015), we determined that the employee came forward with sufficient evidence at an expedited hearing to entitle her to a panel of physicians, even though there was no proof in the record that the employee's medical condition was causally related to the work accident. We determined that, at an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence but, instead, must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2015). *Id.* Subsequently, we clarified that this lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

Here, the trial court's analysis focuses primarily on whether Employee presented sufficient evidence to meet the burden of proof as described in *McCord*. The trial court stated that "[u]pon careful application of [*McCord*], the Court holds [Employee] has come forward with sufficient evidence to entitle her to a panel of orthopedic specialists." Finding an "instructive analogy" in *Lewis v. Merry Maid*, No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016), the trial court noted that the medical proof was "not entirely clear," but found it "sufficient to entitle [Employee] to a panel of orthopedic specialists as recommended by the provider at Jackson General [emergency department]."

Unlike the instant case, however, both *McCord* and *Lewis* addressed circumstances where a panel of physicians had not been provided in the first instance. While an analysis under *McCord* is frequently the point where a trial court's analysis begins, it is not in all cases where the analysis should end. The employer denied all benefits in *McCord*, and we determined that the employee had presented sufficient evidence to entitle her to a panel of physicians. *McCord*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9. In contrast, Employer in the instant case provided a panel, and Employee selected a medical provider from that panel. However, the parties dispute whether Dr. Sioson is a properly-selected panel physician as described in Tennessee Code Annotated sections 50-6-204(a)(3) (2015) and 50-6-102(14)(E) (2015). While the trial court expressed "serious doubts as to whether [Employer] provided [Employee] with a valid panel," the trial court "believe[d] [Employee's] testimony that she was steered toward [WorkCare] and believe[d] she expected to be seen there and not in Dr. Sioson's office." Nevertheless, the court did not actually determine whether a valid panel was provided or whether Dr. Sioson was a treating physician selected from the panel as contemplated in section 50-6-204(a)(3). If Dr. Sioson is an authorized treating physician selected in accordance with section 50-6-204(a)(3), his opinion "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E).

Although Employer provided a panel of medical providers and Employee made a selection from that panel and has, arguably, been examined and provided treatment by a physician as a result of her selection of WorkCare from the panel, the trial court did not address whether the panel complied with section 50-6-204(a)(3), whether Dr. Sioson was "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)," whether Dr. Sioson's opinion on the issue of causation is presumed correct, and if so, whether that opinion was rebutted by a preponderance of the evidence. Instead, relying on *McCord* and *Lewis*, the trial court determined that although the medical proof was "not entirely clear," it was "sufficient to entitle [Employee] to a panel of orthopedic specialists as recommended by the provider at Jackson General."

In their pre-hearing briefs submitted to the trial court and in their briefs on appeal, both parties addressed whether Dr. Sioson is an authorized treating physician and whether his causation opinion is entitled to a presumption of correctness. The trial court did not address these issues, and it is not our place to do so in the first instance. *See Fritts v. Anderson Cty. Election Comm'n*, Nos. E2003-00015-COA-R3-CV & E2002-03118-COA-R3-CV, 2003 Tenn. App. LEXIS 564, at *8 (Tenn. Ct. App. Aug. 11, 2003) ("[T]he [trial court] made no finding of fact with respect to the [disputed factual issue]. It is inappropriate for this Court to assume the role of original fact finder, even if the factual record appeared complete."). Accordingly, the trial court's order is vacated and the case is remanded for determination of whether Dr. Sioson is the "treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3)," as contemplated in section 50-6-102(14)(E), such that his causation opinion is

presumed to be correct and, if so, whether the presumption was rebutted by a preponderance of the evidence.

## Conclusion

For the foregoing reasons, the trial court's order is vacated and the case is remanded for determination of these issues that have yet to be resolved by the trial court.

**FILED**

**October 12, 2016**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 2:12 P.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Mae Crumble | ) | Docket No.    2016-07-0351 |
| | ) | |
| v. | ) | State File No.  99792-2015 |
| | ) | |
| Express Employment Services, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 12th day of October, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Edward L. Martindale, Jr. | | | | | X | edwardlmartindale@gmail.com |
| Gregory H. Fuller | | | | | X | ghfuller@mijs.com |
| Allen Phillips, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov